**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| ARNOLD E. WEBB JR., individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| DR PEPPER SNAPPLE GROUP, INC., and DR PEPPER/SEVEN UP, INC., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

**COME NOW**, Plaintiff Arnold E. Webb Jr. ("Plaintiff") by and his counsel, brings this Class Action Complaint against Defendants Dr Pepper Snapple Group, Inc., and Dr Pepper/Seven Up, Inc. ("Defendants"), on behalf of himself and all others similarly situated, and allege upon personal knowledge as to his own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this consumer protection and false advertising class action lawsuit against Defendants, based on Defendants' false and misleading business practices with respect to the marketing and sale of its Canada Dry Ginger Ale (the "Product").

2.      At all relevant times, Defendants has labeled, packaged, and marketed the Product as being "Made from Real Ginger," indicating that the Product contains ginger.

3.      However, independent testing by a laboratory determined that the Product does not contain a detectable amount of ginger.

4.     Therefore, unbeknownst to consumers, the Product was and continues to be falsely advertised because the Product does not contain a detectable amount of ginger, despite Defendants' representations.

5.     Plaintiff and other consumers purchased the Product, reasonably relying on Defendants' deceptive representation about the Product, and believing that the Product contained a detectable amount of ginger.  Had Plaintiff and other consumers known that the Product did not contain a detectable amount of ginger they would not have purchased the Product or would have paid significantly less for the Product.  Therefore, Plaintiff and consumers have suffered injury in fact as a result of Defendants' deceptive practices.

6.     Plaintiff brings this class action lawsuit on behalf of himself and all others similarly situated.  Plaintiff seeks to represent a Nationwide Class as well as a Missouri Subclass (defined *infra* in paragraphs 31-32) (collectively referred to as "Classes").

7.     Plaintiff, on behalf of himself and other consumers, is seeking damages, restitution, declaratory and injunctive relief, and all other remedies the Court deems appropriate.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiff, as well as most members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of Defendants.

9.     This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts in Missouri or otherwise intentionally did avail themselves of the markets within Missouri, through their sale of the Product in Missouri and to Missouri consumers.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendants regularly conduct business throughout this District, and a substantial part of the events and/or omissions giving rise to this action occurred in this District.

## PARTIES

11.     Plaintiff Arnold E. Webb Jr. is a citizen of Missouri, residing in Jackson County. During the last year, Mr. Webb purchased two cans of the Product from vending machines located in Independence, Missouri.  During that same time, Mr. Webb also purchased a 20 fl. oz. bottle of the Product from a Price Chopper grocery store located in Blue Springs, Missouri. Mr. Webb purchased the Product reasonably relying on the Defendants' representation on the Product that the Product was "Made from Real Ginger," and believing that the Product would contain at least a detectable amount of ginger. Mr. Webb also saw and relied on a television commercial stating, "[f]ind your way to relaxation with the crisp soothing taste of real ginger and bubbles. Canada Dry, the root of relaxation."[1] Mr. Webb would not have purchased the Product or would have paid significantly less for the Product had he known that the Product does not contain a detectable amount of ginger.  Mr. Webb therefore suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and fraudulent practices, as described herein.  After Mr. Webb learned that the Product is falsely advertised, he ceased purchasing and consuming the Product, and retained counsel.  Mr. Webb is likely to purchase the Product in the future if it was reformulated to include a detectable amount of ginger.

12.     Defendant Dr Pepper Snapple Group, Inc. is a corporation incorporated in Delaware, with its principal place of business in Plano, Texas.  Defendant Dr Pepper Snapple Group, Inc. directly and/or through its agents, formulates, manufactures, labels, packages, markets,

---

[1] https://www.youtube.com/watch?v=nvQKChf_ooc (last visited on July 25, 2017).

distributes, and sells the Product nationwide, including in Missouri. Defendant Pepper Snapple Group, Inc. has maintained substantial distribution and sales in this District.

13.    Defendant Dr Pepper/Seven Up, Inc. is a corporation incorporated in Delaware, with its principal place of business in Plano, Texas. Defendant Dr Pepper/Seven Up, Inc. is a wholly owned subsidiary of Defendant Dr Pepper Snapple Group, Inc.

## FACTUAL ALLEGATIONS

### I.    The False And Misleading Advertisement Of The Product

14.    At all relevant times, Defendants directly and/or through their agents, formulated, manufactured, labeled, packaged, marketed, distributed, and sold the Product across Missouri and the United States. The Product is sold in store and/or online at various retailers including, but not limited to, Price Chopper, Target, Amazon, Walgreens, CVS, and Walmart.

15.    At all relevant times, as depicted below, the Product contains the following conspicuous representation, or one substantially similar to it: "Made from Real Ginger."[2]

---

[2] http://www.canadadry.com/products/ginger-ale (last visited on July 25, 2017); https://www.riteaid.com/shop/canada-dry-ginger-ale-20-fl-oz-1-25-pt-591-ml-4802643 (last visited on July 25, 2017).

 

16. Furthermore, Defendants have employed a number of television advertisements that reinforce Defendants' representation that the Product is "Made from Real Ginger." In one commercial, a little girl is seen selling the Product at a rural farm stand. When she runs out of the Product, she runs to the field and pulls out more Product, which is attached to ginger plant roots:[3]

---

[3] https://vimeo.com/47196454 (last visited on July 24, 2017).



The commercial eventually cuts to the following image about the Product, with the voice-over then narrating that "For refreshingly real ginger taste, grab a Canada Dry Ginger Ale. Real Ginger. Real Taste."



17.    In another television commercial, people are seen on a ginger farm. One farmer is seen pulling on a ginger plant which is later shown to be attached to the Product by its root:[4]

---

[4] https://vimeo.com/38249296 (last visited on July 25, 2017).



18.     In another commercial, a young lady opens her fridge to grab the Product, only to find resistance.  The commercial cuts to a farmer on a ginger farm struggling to pull out one of his ginger plants.  The farmer eventually pulls out the plant, which is attached to the Product in the lady's fridge.  The voiceover then narrates "Find your way to relaxation with the crisp soothing taste of real ginger and bubbles. Canada Dry, the root of relaxation:"[5]

---

[5] https://www.youtube.com/watch?v=nvQKChf_ooc (last visited on July 25, 2017).





## II. The Product Does Not Contain A Detectable Amount Of Ginger

19. Despite Defendants' representations that the Product is "Made from Real Ginger," and their advertisements reinforcing such representations, the Product does not contain a detectable level of ginger.

20.     In fact, independent testing by a laboratory determined that the Product does not contain a detectable amount of ginger.

21.     Defendants knew or should have known that the Product does not contain a detectable amount of ginger because Defendants and/or its agents formulate, test, and manufacture the Product.

22.     Defendants knew or should have known that Plaintiff and other consumers, in purchasing the Product, would rely on Defendants' representations about the Product and would therefore reasonably believe that the Product contains at least a detectable amount of ginger.

23.     In reasonable reliance on Defendants' representations about the Product, and believing that the Product contains at least a detectable amount of ginger, Plaintiff and other consumers purchased the Product.

24.     Plaintiff and other consumers did not know, and had no reason to know, that the Product does not contain a detectable amount of ginger.

25.     Because the Product does not contain a detectable amount of ginger, as represented by Defendants, and reasonably expected by Plaintiff and other consumers, Defendants' uniform practice regarding the marketing and sale of the Product was and continues to be misleading and deceptive.

26.     Each consumer has been exposed to the same or substantially similar deceptive practice, as at all relevant times (1) the Product uniformly represents that the Product is "Made from Real Ginger," and (2) the Product uniformly does not contain a detectable amount of ginger.

27.     Plaintiff and other consumers have paid an unlawful premium for the Product. Plaintiff and other consumers would have paid significantly less for the Product had they known that the Product do not contain a detectable amount of ginger.  In the alternative, Plaintiff and other

consumers would not have purchased the Product at all had they known that the Product does not contain a detectable amount of ginger. Therefore, Plaintiff and other consumers purchasing the Product suffered injury in fact and lost money as a result of Defendants' false, unfair, and fraudulent practices, as described herein.

28.     Ginger is a premium ingredient which sells at wholesale for approximately $1-2 per pound.[6] In contrast, high fructose corn syrup, the primary sweetener used in the Product, sells at wholesale for a fraction of that price.[7]

29.     As a result of their misleading business practice, and the harm caused to Plaintiff and other consumers, Defendants should be required to pay for all damages caused to consumers, including Plaintiff. Furthermore, Defendants should be enjoined from engaging in these deceptive practices.

30.     Despite being misled by Defendants, Plaintiff would likely purchase the Product in the future if the Product was reformulated to include at least a detectable amount of ginger.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of himself and all persons in the United States, who within the relevant statute of limitations periods, purchased the Product ("Nationwide Class").

32.     Plaintiff also seeks to represent a subclass defined as all Missouri residents, who within the relevant statute of limitations periods, purchased the Product ("Missouri Subclass").

---

[6] https://www.marketnews.usda.gov/mnp/fv-report-top-filters?locName=&commAbr=GNGRT&commName=GINGER%20ROOT&className=VEGETABLES&rowDisplayMax=25&startIndex=1&navClass=VEGETABLES&navType=byComm&repType=termPriceDaily&type=termPrice (last visited on July 24, 2017).
[7] https://www.ers.usda.gov/webdocs/DataFiles/53304/TABLE09.XLS?v=42922 (last visited on July 24, 2017).

33.     Excluded from the Classes are Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants has or had a controlling interest.  Any judge and/or magistrate judge to whom this action is assigned and any members of such judges' staffs and immediate families are also excluded from the Classes.  Also excluded from the Classes are persons or entities that purchased the Product for sole purposes of resale.

34.     Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

35.     Plaintiff is a member of all proposed Classes.

36.     **Numerosity:** Defendants have sold millions of units of the Product.  The Product is sold in store and/or online at various retailers including, but not limited to, Price Chopper, Target, Amazon, Walgreens, CVS, and Walmart.  Accordingly, members of the Classes are so numerous that their individual joinder herein is impractical.  While the precise number of class members and their identities are unknown to Plaintiff at this time, the number may be determined through discovery.

37.     **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual class members.  Common legal and factual questions include, but are not limited to, the following:

        a.     Whether or not the Product contains a detectable amount of ginger; and

        b.     Whether consumers relied on the "Made from Real Ginger" representations in purchasing the Product.

38.     **Typicality:** Plaintiff's claims are typical of the claims of the Classes he seeks to

represent in that Plaintiff and members of the Classes were all exposed to the same or substantially similar false and misleading representations, purchased the Product relying on the uniform false and misleading representations, and suffered losses as a result of such purchases.

39. **Adequacy:** Plaintiff is an adequate representative of the Classes he seeks to represent because his interests do not conflict with the interests of the members of the Classes, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

40. **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes. The size of each claim is too small to pursue individually and each individual Class member will lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. The class action mechanism is designed to remedy harms like this one that are too small in value, although not insignificant, to file individual lawsuits for.

41. This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that are generally applicable to the Class members, thereby making final injunctive relief appropriate with respect to all Classes.

42. This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the Classes predominate over any questions that affect only individual members, and because the class action mechanism

is superior to other available methods for the fair and efficient adjudication of the controversy.

## FIRST CLAIM FOR RELIEF
### Violation of Missouri's Merchandising Practices Act ("MMPA")
#### (*for the Missouri Subclass*)

43.     Plaintiff repeats the allegations contained in paragraphs 1-42 above as if fully set forth herein.

44.     Plaintiff brings this claim individually and on behalf of the members of the proposed Missouri Subclass against Defendants.

45.     The MMPA provides that it is unlawful to "act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." Mo. Rev. Stat. § 407.020.1.

46.     The Product is "merchandise" pursuant to Mo. Rev. Stat. § 407.010(4), and Defendants are selling the Product in trade or commerce.

47.     As demonstrated above, Defendants' conduct constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices in connection with the sale or advertisement of the Product in that Defendants falsely advertise that the Product is "Made from Real Ginger" when the no detectable level of ginger was found in an independent laboratory analysis of the Product.

48.     Defendants' misrepresentation regarding the Product is material in that it relates to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Missouri Consumer Subclass.

49.     At all relevant times, Defendants knew or reasonably should have known that the Product does not contain a detectable amount of ginger, and that Plaintiff and other members of the Missouri Subclass would reasonably and justifiably rely on those representations about the Product

in purchasing them.

50.     Plaintiff and members of the Missouri Subclass purchased the Product for personal, family, or household purposes.

51.     Plaintiff and other members of the Missouri Subclass reasonably and justifiably relied on Defendants' misleading and fraudulent representations about the Product when purchasing them.

52.     Plaintiff and members of the Missouri Subclass have suffered an ascertainable loss caused by Defendants because they would not have purchased the Product or would have paid significantly less for the Product, had they known that Defendants' conduct was misleading and fraudulent.

53.     Defendants' conduct was intentional, wrongful, and malicious and entitles Plaintiff and proposed Missouri Subclass members to the recovery of punitive damages as authorized by statute. Mo. Rev. Stat. § 407.025.1.

54.     In addition, Defendants' conduct has caused Plaintiff and members of the Missouri Subclass irreparable injury.  As described herein, Defendants have engaged in unlawful and misleading conduct on a routine and automated basis, harming Missouri consumers in a uniform manner.  Unless restrained and enjoined, Defendants will continue such conduct.  As authorized under Mo. Rev. Stat. § 407.025.2.  Therefore, Plaintiff requests injunctive relief, and such other equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### Breach of Express Warranty
#### (*for the Classes*)

55.     Plaintiff repeats the allegations contained in paragraphs 1-42 above as if fully set forth herein.

56.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Class against Defendants.

57.     Defendants have expressly warranted that the Product is "Made from Real Ginger." This representation about the Product: (1) is an affirmation of fact or promise made by Defendants, to consumers, that the Product contain at least a detectable amount of ginger, (2) became part of the basis of the bargain to purchase the Product; and (3) created an express warranty that the Product would conform to the affirmation of fact or promise. In the alternative, the representation is a description of a good, which was made as part of the basis of the bargain to purchase the Product, and which created an express warranty that the Product would conform to the Product description.

58.     Plaintiff and members of the Classes reasonably and justifiably relied on the foregoing express warranty, believing that the Product did in fact conform to the warranty.

59.     Defendants have breached the express warranty made to the Plaintiff and members of the Classes by failing to formulate, manufacture, and sell the Product to satisfy that express warranty.

60.     Plaintiff and members of the Classes paid a premium price for the Product but did not obtain the full value of the Product as represented.  If Plaintiff and members of the Classes had known of the true nature of the Product, they would not have purchased the Product or would not have been willing to pay the premium price associated with the Product.

61.     As a result, Plaintiff and members of the Classes suffered injury and deserve to recover all damages afforded under the law.

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
(*for the Classes*)

62.     Plaintiff repeats the allegations contained in paragraphs 1-42 above as if fully set

forth herein.

63. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

64. Defendants are merchants with respect to the sale of carbonated beverages, including the Product. Therefore, a warranty of merchantability is implied in every contract for sale of the Product to Plaintiff and other consumers.

65. In representing on the Product that the Product is "Made from Real Ginger," Defendants have provided a promise or affirmation of fact to Plaintiff and other consumers.

66. However, the Product does not conform to the promises or affirmations of fact, as the Product does not contain a detectable amount of ginger.

67. Therefore, Defendants have breached their implied warranty of merchantability in regard to the Product.

68. If the Plaintiff and members of the Classes had known that the Product does not conform to Defendants' promises or affirmations of fact, they would not have purchased the Product or would not have been willing to pay the premium price associated with Product. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

### FOURTH CLAIM FOR RELIEF
### Common Law Fraud
### (*for the Classes*)

69. Plaintiff repeats the allegations contained in paragraphs 1-42 above as if fully set forth herein.

70. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

71. Defendants have willfully, falsely, and knowingly formulated the Product without

any detectable amount of ginger. Despite this, Defendants continue to intentionally represent that the Product is "Made from Real Ginger." Therefore, Defendants have made, and continue to make, misrepresentations as to the Product.

72. Defendants' misrepresentations are material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the composition of the Product.

73. Defendants knew or recklessly disregarded the fact that the Product does not contain a detectable amount of ginger.

74. Defendants intend that consumers rely on these representations, as the representations are made prominently on the Product, and are reinforced throughout Defendants' television advertisement campaign.

75. Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' misrepresentations when purchasing the Product and had the correct facts been known, would not have purchased the Product or would not have purchased it at the prices at which it was offered.

76. Therefore, as a direct and proximate result of Defendants' fraud, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Product, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**Intentional Misrepresentation**
(*for the Classes*)

77. Plaintiff repeats the allegations contained in paragraphs 1-42 above as if fully set forth herein.

78. Plaintiff brings this claim individually and on behalf of the members of the Classes

against Defendants.

79.     Defendants have marketed the Product in a manner indicating that the Product contains at least a detectable level of ginger.  However, the Product does not contain a detectable level of ginger.  Therefore, Defendants have made misrepresentations as to the Product.

80.     Defendants' representations regarding the Product are material to a reasonable consumer because they relate to the composition of the Product purchased by the consumer.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

81.     At all relevant times when such representations were made, Defendants knew that the representation were false and misleading, or has acted recklessly in making the representations and without regard to the truth.

82.     Defendants intend that Plaintiff and other consumers rely on the representations made about the Product, as the representations are made prominently on the Product, and are reinforced throughout Defendants' television advertisement campaign.

83.     Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' intentional misrepresentation when purchasing the Product, and had the correct facts been known, would not have purchased the Product or would not have purchased it at the prices at which it was offered.

84.     Therefore, as a direct and proximate result of Defendants' intentional misrepresentation, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Product, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

85.     Plaintiff repeats the allegations contained in paragraphs 1-42 above as if fully set forth herein.

86.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

87.     Defendants have marketed the Product in a manner indicating that the Product contains at least a detectable amount of ginger.  However, the Product does not contain a detectable amount of ginger.  Therefore, Defendants have made misrepresentations as to the Product.

88.     Defendants' representations regarding the Product are material to a reasonable consumer because they relate to the composition of the Product purchased by consumers.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

89.     At all relevant times when such misrepresentations were made, Defendants knew or has been negligent in not knowing that the representations were false and misleading. Defendants had no reasonable grounds for believing their representations were not false and misleading.

90.     Defendants intend that Plaintiff and other consumers rely on the representations made about the Product, as the representations are made prominently on the Product, and are reinforced throughout Defendants' television advertisement campaign.

91.     Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' negligent misrepresentation when purchasing the Product, and had the correct facts been known, would not have purchased the Product or would not have purchased it at the prices at which it was offered.

92.     Therefore, as a direct and proximate result of Defendants' negligent misrepresentation, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Product, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF
### Quasi Contract/Unjust Enrichment/Restitution
### (*for the Classes*)

93.     Plaintiff repeats the allegations contained in paragraphs 1-42 above as if fully set forth herein.

94.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

95.     As alleged herein, Defendants intentionally and recklessly made a misleading representation about the Product to Plaintiff and members of the Classes to induce them to purchase the Product.   Plaintiff and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendants. Plaintiff and members of the Classes therefore have been induced by Defendants' misleading and false representations about the Product, and paid for them when they would and/or should not have, or paid more money to Defendants for the Product than they otherwise would and/or should have paid.

96.     Plaintiff and members of the Classes have conferred a benefit upon Defendants as Defendants has retained monies paid to them by Plaintiff and members of the Classes.

97.     The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes – i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Defendants.

98.     Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or

compensation conferred upon it without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefit compared to the value actually received.

99.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.    For an order certifying the Nationwide Class and the Missouri Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representatives of all Classes; and naming Plaintiff's attorneys as Class Counsel to represent all Classes.

B.    For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

C.    For an order finding in favor of Plaintiff, and all Classes, on all counts asserted herein;

D.    For an order awarding all monetary damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For interest on the amount of any and all economic losses, at the prevailing legal rate;

G.    For an order of restitution and all other forms of equitable monetary relief;

H.    For injunctive relief as pleaded or as the Court may deem proper;

I.     For an order awarding Plaintiff and all Classes their reasonable attorneys' fees, expenses and costs of suit, including as provided by statute such as under Mo. Rev. Stat. § 407.025.1; and

J.     For any other such relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.


Dated:  July 27, 2017                    By:___*/s/ Tim E. Dollar*_____
                                          Tim E. Dollar, Missouri Bar No. 33123
                                          **DOLLAR BURNS & BECKER, L.C.**
                                          1100 Main Street, Suite 2600
                                          Kansas City, MO 64105
                                          Telephone: (816) 876-2600
                                          Facsimile: (816) 221-8763
                                          Email:  timd@dollar-law.com