IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ARNOLD E WEBB, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; <br><br> Plaintiff, <br><br> vs. <br><br> DR PEPPER SNAPPLE GROUP, INC., DR PEPPER/SEVEN UP, INC., <br><br> Defendants. | 4:17-00624-CV-RK |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants Dr Pepper Snapple Group, Inc. and Dr Pepper/Seven Up, Inc. ("Defendants")' Motion to Dismiss. (Doc. 18.) Defendants seek dismissal of Plaintiff Arnold E. Webb's Complaint (doc. 1) pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and 12(b)(1). Plaintiff filed suggestions in opposition (doc. 22) as well as supplemental authority (doc. 29). Defendants filed a reply. (Doc. 30.)[1] For the reasons stated below, the motion is **DENIED**.

**I.     Background**

Plaintiff brings this putative class action lawsuit alleging Defendants engaged in false and misleading business practices regarding the marketing and sale of its Canada Dry Ginger Ale (the "Product"). (Doc. 1 ¶ 1.) Specifically, Plaintiff alleges that Defendants "labeled, packaged, and marketed the Product as being 'Made from Real Ginger,' indicating that the Product contains ginger." (*Id.* at ¶ 2.) According to Plaintiff, laboratory tests concluded that "the Product does not contain a detectable amount of ginger." (*Id.* at ¶ 3.) Plaintiff alleges that he and other consumers purchased the Product, "reasonably relying on Defendants' deceptive representation about the Product, and believing that the Product contained a detectable amount of ginger." (*Id.* at ¶ 5.) Plaintiff further alleges that "[h]ad [he] and other consumers known that the Product did

---

[1] Defendants also filed a Request for Judicial Notice which asks the Court to take judicial notice of certain labels attached as exhibits to the Motion to Dismiss. (Doc. 21.) Defendants filed an Amended Request for Judicial Notice. (Doc. 40.) Plaintiff filed Objections to Defendants' Amended Request for Judicial Notice. (Doc. 48.) The Court notes this Request for Judicial Notice is pending but its resolution is not necessary for resolution of the Motion to Dismiss.

not contain a detectable amount of ginger[,] they would not have purchased the Product or would have paid significantly less for the Product." (*Id.* at ¶ 5.)

Plaintiff brings the following claims against Defendants: violation of Missouri's Merchandising Practices Act ("MMPA") (Count I); breach of express warranty (Count II); breach of implied warranty of merchantability (Count III); common law fraud (Count IV); intentional misrepresentation (Count V); negligent misrepresentation (Count VI); and "[q]uasi contract/[u]njust enrichment/[r]estitution" (Count VII).[2]  (Doc. 1.) Plaintiff seeks damages, restitution, declaratory relief, and injunctive relief. (*Id.* at ¶ 7.)

## II.  Standards of Review

### A.  Rule 12(b)(6)

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted[.]"  Federal Rule of Civil Procedure 8(a)(2) sets forth the pleading standard and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Although Rule 8 does not require "detailed factual allegations," a pleading must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully[]" or pleaded facts that are "merely consistent with a defendant's liability[.]"  *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

---

[2] According to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court with diversity jurisdiction, must apply the substantive law of the forum state unless there is a federal statutory or constitutional ruling otherwise. *See Washington v. Countrywide Home Loans, Inc.*, 655 F.3d 869, 873 (8th Cir. 2011) ("[i]n a diversity case, the law declared by the state's highest court is binding"); *Hudson Specialty Ins. Co. v. Brash Tygr, LLC*, 769 F.3d 586, 591 (8th Cir. 2014) (quoting *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006)) (if "a state's highest court has not decided an issue, it is up to this [district] court to predict how the state's highest court would resolve that issue").

2

When considering a motion to dismiss, the Court must accept as true all allegations in the complaint, but is not bound by legal conclusions disguised as factual allegations. *Id.* at 678-79. "The complaint must be liberally construed in the light most favorable to the plaintiff." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). The moving party has the burden to show that no claim has been stated. *See* 2-12 Moore's Federal Practice - Civil § 12.34 (2017). "A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." *Coleman*, 40 F.3d at 258.

**B.  Rule 9(b)**

Federal Rule of Civil Procedure 9(b) provides a heightened pleading requirement for claims involving allegations of fraud, negligent misrepresentation, or intentional misrepresentation. *Khaliki v. Helzberg Diamond Shops, Inc.*, 2011 WL 1326660, at *3 (W.D. Mo. Apr. 6, 2011); *Great Lakes Transmission Ltd. P'ship v. Essar Steel Minnesota LLC*, 871 F. Supp.2d 843, 859-60 (D. Minn. May 15, 2012). *See also Peterson-Price v. U.S. Bank Nat. Ass'n*, 2010 WL 1782188, at *12 (D. Minn. May 4, 2010) ("Rule 9(b)'s pleading requirements apply to claims alleging misrepresentations, whether styled as intentional misrepresentations or negligent misrepresentations."). Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud[.]" To comply with Rule 9(b)'s particularity requirement, "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted). "Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *Id.* (citations omitted).

**C.  Rule 12(b)(1)**

Similar to a Rule 12(b)(6) motion to dismiss, when a defendant raises a facial challenge to subject-matter jurisdiction through a Rule 12(b)(1) motion to dismiss, the plaintiff enjoys certain safeguards. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). The Court accepts the allegations in the complaint as true, construing them most favorably to the plaintiff, and will not look beyond the face of the complaint to determine jurisdiction. *See id.* The party

3

invoking federal jurisdiction has the burden to establish he or she has standing to assert the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### III. Discussion

#### A. Sufficiency of Pleading Actionable Misrepresentation

Defendants argue Plaintiff has failed to plead an actionable claim that the Product's label "Made From Real Ginger" was false, misleading, or unfair. Defendants contend that Plaintiff's conclusion regarding the misrepresentation on the label is not supported by Plaintiff's allegations that the lab test results showed no "detectable amount of ginger" contained in the Product. Defendants contend Plaintiff's conclusion is false because: (1) Plaintiff's interpretation of the representation is unreasonable, and (2) Plaintiff has not pled the falsity of the representation with particularized details about the lab testing. Defendants therefore argue that Plaintiff's failure to plead a "cogent factual pleading" that the Product is not, in fact, "made from" ginger, disposes of the entire case.

Plaintiff argues he has sufficiently pled that the representation is false by alleging that the Product does not contain a detectable amount of ginger as shown by lab testing. In support, Plaintiff argues that the MMPA prohibits a representation that is truthful but nonetheless misleading to reasonable consumers. Plaintiff argues a reasonable consumer could believe that a product labeled "Made From Real Ginger" would contain at least some detectable amount of ginger and that specificity regarding the lab testing is not required at the pleading stage.

A civil action under the MMPA requires a showing of "the use or employment by another person of a method, act, or practice declared unlawful by section 407.020." MO. REV. STAT. § 407.025.1. The unlawful practices set forth in § 407.020 include "deception; fraud; false pretense; false promise; misrepresentation; unfair practice; or the concealment, suppression, or omission of any material fact." MO. REV. STAT. § 407.020.1. Courts have interpreted the MMPA to protect consumers from fraud and to "preserve fundamental honesty, fair play, and right dealings in public transactions." *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 310-11 (Mo. Ct. App. 2016). Whether the conduct alleged is deceptive under the MMPA is to be analyzed under the "reasonable consumer" standard. *Id.* at 312. Under the MMPA, the reasonable consumer standard does not require plaintiffs to show individualized reliance upon the alleged [fraud or] misrepresentations; however, the plaintiffs "cannot base their claims on alleged fraud or misrepresentations upon which no reasonable consumer would rely". *Hurst v.*

4

*Nissan North America, Inc.*, 2016 WL 1128297, at *8 ft. nt. 8 (W.D. Mo. March 22, 2016) (reversed on other grounds). Although Defendants argue Plaintiff's interpretation is unreasonable because the representation does not convey that the Product contains a particular amount of ginger, whether a reasonable consumer would be deceived by a label is generally a question of fact to be tried by a fact finder and is inappropriate to be resolved in a motion to dismiss. *See Bratton v. Hershey Co.*, 2017 WL 2126864, at *8 (W.D. Mo. May 16, 2017); *Thornton v. Pinnacle Foods Group LLC*, 2016 WL 4073713, at *3 (E.D. Mo. Aug. 1, 2016) (the effect an ingredient label has on a reasonable consumer's understanding is a fact question).

The Defendants' citation to *Kelly v. Cape Cod Potato Chip Co. Inc.* to support that the ingredient list on the Product forecloses Plaintiff's theory does not change the Court's conclusion. 81 F. Supp. 3d 754, 761-62 (W.D. Mo. Jan. 27, 2015) (upholding the "ingredient defense" and finding a reasonable consumer would not be deceived by an ambiguity in a product's label if that product had a disclosed ingredient list that clarified the ambiguity). After *Kelly*, the Missouri Court of Appeals decided *Murphy v. Stonewall Kitchen, LLC*, and its holding conflicts with *Kelly*. 503 S.W.3d at 310-13. *See Bratton*, 2017 WL 2126864, at *7 ("*Kelly* was decided before *Murphy,* in which the Missouri Court of Appeals expressly rejected the ingredient label defense at the motion to dismiss stage," and as a result of the *Murphy* decision, "*Kelly* is wrong to the extent that it holds, as a matter of law, that consumers are responsible for evaluating whether some information on a package label is inconsistent with other information on the label"); *Murphy*, 503 S.W.3d at 310-13 (the "FDA does not require an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct the misrepresentations;" further, a reasonable consumer would expect the ingredient list to comply with the representations made on the package); *Thornton*, 2016 WL 4073713, at *3 ("the mere presence of an ingredient statement on the back of a product does not eliminate the possibility that reasonable consumers may be misled").

Defendants direct the Court to *Chuang* in support of the proposition that a reasonable consumer would understand that labeling a product as "made with" some ingredient does not convey that a specific amount of that ingredient will be present in the product. *Chuang v. Dr. Pepper Snapple Group, Inc. et al*, 2017 WL 4286577 (C.D. Ca. Sept. 20, 2017). In *Chuang*, the product's label stated the product was "made with real fruits and vegetables," and contains "100% of your daily value of vitamin C," but the plaintiff argued the label misled consumers into

5

believing the product was healthy. *Id.* at *1-2. The Court found the defendant did not make any false statements concerning the product because the product did contain fruits and vegetables and a serving of the product contained 100% of the daily value of vitamin C. However here, unlike in *Chuang*, Plaintiff has pled sufficient evidence in the pleadings to assert Defendants have made false statements concerning the Product's label and that the Product does not contain a detectable amount of ginger.

Accordingly, because Plaintiff alleges independent laboratory testing revealed that the Product does not contain a detectable amount of ginger and a reasonable consumer would be misled into believing that the Product contains at least some detectable amount of ginger, the Court finds the representation "Made from Real Ginger" could be false or misleading to a reasonable consumer.

**B.     Rule 9(b) Particularity Requirements**

Defendants misdirect their focus on Rule 9(b)'s particularity requirements concerning laboratory tests and television advertising campaigns. Defendants argue Plaintiff's allegations concerning the laboratory tests fail to meet Rule 9(b)'s particularity requirements because the Plaintiff does not allege who completed the laboratory testing, what the laboratory tested for, what ginger markers the laboratory test was calibrated to detect, and what detection standards the laboratory employed. Defendants also contend that Plaintiff has not satisfied Rule 9(b) with regard to Defendants' television advertising campaign because Plaintiff fails to allege: when the commercials were broadcast, what commercials Plaintiff viewed, when the Plaintiff was persuaded by the commercials to purchase the Product, and which purchases of the Product Plaintiff made in reliance on the television advertising campaign.

Plaintiff argues Rule 9(b)'s particularity requirements were satisfied in the Complaint. Concerning the laboratory tests, Plaintiff alleges: the "who" is Defendants and the independent laboratory that tested the Product; the "what" is the misrepresentation on the label "Made from Real Ginger;" the "when" is the two occasions where Plaintiff purchased the Product within the last year; the "where" are the locations the plaintiff purchased the Product- a vending machine in Independence, Missouri, and a grocery store in Blue Springs, Missouri; and the "how" is the Product label's alleged false and misleading nature because the Product does not contain a detectable amount of ginger as determined in laboratory testing.

6

Plaintiff argues Rule 9(b)'s particularity requirements are also satisfied with regard to Defendants' television advertising campaign. The "who" is Defendants, the "what" are the television advertisements, the "where" is the television channels and locations that the advertisements were broadcasted, the "when" are the dates and times the advertisements aired during the class period, and the "how" are the representations in the advertisements that suggested the Product contains ginger.

Rule 9(b)'s particularity requirements are satisfied "where plaintiff identifies particular statements alleged to be misleading, the basis for contention, where the statements appear, and the relevant time period in which statements were used." *Thornton*, 2016 WL 4073713, at *3 (citing *Chacana v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010). Additionally, the plaintiff does not need to state each element of the fraud claim with particularity; instead, the plaintiff must state sufficient facts such that the pleadings are not conclusory. *Id.* at 4 (citing *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997). Specific details concerning the laboratory testing are unnecessary at the pleading stage. *See Fonseca v. Goya Foods, Inc.*, 2016 U.S. Dist. LEXIS 121716, at *14, 16 (N.D. Cal. Sep. 8, 2016). Finally, Rule 9(b)'s particularity requirements relax when concerning matters within the opposing party's knowledge. *Fitzhenry-Russell v. Dr Pepper/Snapple Grp.*, 2017 U.S. Dist. LEXIS 155654, at *17 (C.D. Cal. Sept. 22, 2017).[3]

---

[3] In this similar case, defendants moved to dismiss the complaint arguing the plaintiffs had not satisfied the requirements for pleading fraud under Federal Rule of Civil Procedure 9(b) concerning defendant's television advertising campaign. *See Fitzhenry-Russell*, 2017 U.S. Dist. LEXIS 155654. The court found the "'who' is Dr. Pepper, the 'what' is the four commercials featuring 'Jack's Ginger Farm,' the 'when' is over the last five years, the 'where' is throughout the United States, and the 'how' is that the statements and representations made in the commercials suggested that Canada Dry Ginger Ale contained ginger root." *Id.* at 17. Further, the Court found that although the plaintiffs cannot specify when each commercial aired, the plaintiffs do not need to provide such specificity because the defendants were aware of the date the commercials aired. *Id.* The court found the plaintiffs' fraud allegations were sufficient to satisfy Rule 9(b). *Id.* at 18.

Defendants in this case attempt to distinguish *Fitzhenry-Russell* from this case arguing the *Fitzhenry-Russell* Court erred in denying a motion to dismiss involving similar allegations. The defendants argue that court erred by misapplying a "reasonable consumer" standard under California consumer statutes rather than the standard applied by other federal courts in California. The Court disagrees with Defendants' attempt to distinguish *Fitzhenry-Russell* action because the *Fitzhenry-Russell* action is substantially similar to this case, and the Court finds its holding on this issue persuasive.

7

The Court finds Plaintiff's pleadings are sufficient to satisfy Rule 9(b)'s particularity requirements. The Court is not persuaded by Defendants reliance on *Padilla v. Costco Wholesale Corp.* for the proposition that Plaintiff has not complied with Rule 9(b)'s particularity requirements. 2012 WL 2397012 (N.D. Ill. June 21, 2012). *Padilla* is distinguishable from this case because in *Padilla* the plaintiff alleges "numerous clinical studies" have shown the products "do not work" but does not state why or how the product does not work. *Id.* at 4. The court in *Padilla* found the conclusory allegations that the product does not work, without more, were insufficient to meet Rule 9(b)'s particularity requirements. *Id.* Here, unlike in *Padilla*, Plaintiff's pleadings provide sufficient allegations to satisfy Rule 9(b)'s particularity requirements concerning the Product's laboratory testing and television advertising campaign.

The Court is persuaded by the holdings in *Thornton* and *Fonseca*. *See Thornton,* 2016 WL 4073713 at *4 (the plaintiff satisfied the "when" standard of Rule 9(b) when the plaintiff alleges she purchased the Product during the five years prior to the filing of the complaint, and plaintiff satisfied the "how" when the plaintiff alleges the product's label advertised "Nothing Artificial" but actually contained synthetic ingredients); *Fonseca*, 2016 U.S. Dist. LEXIS 121716, at *14, 16 (the court found allegations of DNA testing of octopus was sufficient to satisfy Rule 9(b) although plaintiff failed to provide when the testing occurred, who performed the tests, and the results of the testing because the plaintiff's assertion that DNA testing concluded the food product labeled octopus actually contained squid was a "plausible factual allegation and the identity of the laboratory was unnecessary because the court takes all of plaintiff's allegations as true at the pleading stage").

Finally, concerning Defendants' television advertising campaign, Defendants are aware of the content and dates of Defendants' television commercials. Therefore, Rule 9(b)'s pleading requirements concerning the content and dates of the television commercials are relaxed. *See Fitzhenry-Russell*, 2017 U.S. Dist. LEXIS 155654, at *17.

Accordingly, the Court finds Plaintiff has alleged a claim that is plausible on its face and satisfied Rule 9(b) particularity requirements. Here, the Plaintiff has sufficiently presented the "who", "what", "where", "when", and "how" of his claims to survive a motion to dismiss under Fed. R. Civ. 9(b) with respect to the laboratory testing and the television advertising campaigns. Consequently, Plaintiff has sufficiently pled actionable misrepresentation.

**C. Breach of Express Warranty and Breach of Implied Warranty Claims**

Defendants contend Plaintiff's breach of express and implied warranty claims fail. "An express warranty is created by any 'affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . that the goods shall conform to the affirmation or promise.'" *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. 2010) (quoting Mo. Rev. Stat. § 400.2-313(1)(a)). To state a claim for breach of express warranty under Missouri law, the Plaintiff must plead, among other things: (1) Defendants sold the Product to Plaintiff, (2) Defendants made a statement of fact about the Product, and (3) the Product did not conform to that statement. *See id.* (citing Mo. Rev. Stat. § 400.2-313(1)(a) (other citations omitted)).

Defendants argue that Plaintiff's breach of express warranty claim fails because Plaintiff's complaint does not plausibly allege a representation by Defendants that was false or likely to mislead a reasonable consumer. The Court disagrees at least in part for the same reasons discussed above in Part III.A. The same statement in the Product's label identified above is an affirmation of fact that the Product contains ginger. Additionally, Plaintiff alleged that this statement was part of the basis of the bargain to purchase the Product and that the statement is false or misleading because Defendants have failed to provide a Product with at least some detectable amount of ginger. (Doc. 1 at ¶¶ 57-59.)

Defendants contend that Plaintiff's breach of implied warranty claim fails because Plaintiff did not allege the product was unfit for the ordinary purpose per the requirements of Mo. Rev. Stat. § 400.2-314(2)(c). However, a breach of implied warranty claim under Missouri law includes any one of the three prongs, (a)-(c), under Mo. Rev. Stat. § 400.2-314(2). "Plaintiff can prove [Defendant] breached the implied warranty of merchantability by showing the [Product]: (a) was not fit for ordinary purposes for which it was used; (b) was not adequately contained, packaged, or labeled, or (c) did not conform to the promises or affirmations of fact made on the container or label." *Grantham v. Wal-Mart Stores, Inc.*, 2012 WL 12898186, at *10 (W.D. Mo. Feb. 28, 2012). Here, Plaintiff alleges that Defendants violated their implied warranty of merchantability as to the Product because the Product does not conform to the promise or affirmation of fact regarding the presence of ginger. *See* Mo. Rev. Stat. § 400.2-314(2)(c).

Consequently, Plaintiff has pled sufficient facts to state claims for breach of express and implied warranty under Mo. Rev. Stat. §§ 400.2-313 and 400.2-314.

**D.      Quasi Contract/Unjust Enrichment/Restitution (Count VII)**

Defendants argue Plaintiff's unjust enrichment claim fails because Plaintiff does not allege that Defendants were directly enriched by a benefit. The Court rejects this argument. To support this contention, Defendants rely on the district court case *Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enters., Inc.*, 2009 WL 2391769 (W.D. Mo. Aug. 3, 2009). That case, however, is distinguishable. There, the district court dismissed the unjust enrichment claim because, unlike this case, it involved (1) a benefit conferred on the defendant by a third party, and (2) a claim based on an express contract. *Id.* at *4. By contrast, upon review of court decisions applying Missouri's unjust enrichment law, this Court is persuaded that "there does not appear to be any bright line rule regarding how directly the defendant must have received a benefit at the plaintiff's expense." *Cromeans v. Morgan Keegan & Co., Inc.*, 2013 WL 12129609, at *5-7 (W.D. Mo. Nov. 5, 2013) (discussing case law applying Missouri law and rejecting the argument that an unjust enrichment claim requires that a defendant receive a benefit directly from the plaintiff); *Garrett v. Cassity*, 2011 U.S. Dist. LEXIS 82884, at *35 (E.D. Mo. July 28, 2011) ("[T]here is no requirement for an unjust enrichment claim that the plaintiff conferred a benefit directly on the defendant[.]"); *CCA Glob. Partners, Inc. v. Yates Carpet, Inc.*, 2006 U.S. Dist. LEXIS 72656, at *32-33 (E.D. Mo. Oct. 5, 2006) (same); *Bratton*, 2017 WL 2126864, at *10 (finding the Missouri law unjust enrichment claim was sufficiently pled where plaintiff alleged that it would be unjust for defendant to retain benefit conferred on it by plaintiff who paid for product that was deceptively packaged).

Under Missouri law, an unjust enrichment claim has the following three elements: (1) Defendants were enriched by a benefit, (2) the enrichment was at the expense of Plaintiff, and (3) it would be unjust to allow Defendants to retain the benefit. *Exec. Bd. of Mo. Baptist Conv. v. Windermere Baptist Conf. Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct. App. 2009). Plaintiff alleged that Defendants were enriched by a benefit from Plaintiff's purchase of the Product in that Defendants retained monies paid to them by Plaintiff (doc. 1 at ¶ 95-96), the enrichment occurred at Plaintiff's expense because he was induced into purchasing the Product and did not obtain the full value of the benefit conferred on Defendants (*id.* at ¶ 97), and therefore, it would be unjust to allow Defendants to retain the benefit (*id.* at ¶ 98).

10

The Court also rejects Defendants' contention that Plaintiff's unjust enrichment claim fails because Plaintiff did not sufficiently allege that Defendants' label was false or misleading for the same reasons discussed above in Part III.A.

Consequently, Plaintiff has pled sufficient facts to state a claim for unjust enrichment.

**E.     Article III Standing to Seek Injunctive and Declaratory Relief (Count I)**

Specific to Plaintiff's claim under the MMPA (Count I), Defendants argue that Plaintiff has not met his burden to plead Article III standing for injunctive and declaratory relief. In support of this argument, Defendants argue that Plaintiff has not pled any real or immediate threat of future injury or any continuing present injury because Plaintiff is now aware of the alleged deception.

During the pleading stage, the plaintiff must plead facts demonstrating each element of Article III standing. *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The plaintiff is not required to establish Article III standing at the pleading stage. *See City of Clarkson Valley v. Mineta*, 495 F.3d 567, 570 (8th Cir. 2007) ("[W]hen a motion to dismiss is made on standing grounds, the standing inquiry must be done in light of the factual allegations of the pleadings.")

Plaintiff seeks injunctive and declaratory relief to restrain Defendants from engaging in false and misleading business practices regarding the marketing and sale of the Product. The MMPA permits this type of declaratory and injunctive relief. *See* MO. REV. STAT. § 407.025.2 (a court may award ". . .in addition to damages, injunction or other equitable relief").

> To satisfy standing requirements under Article III of the United States Constitution, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). To establish an injury in fact when seeking injunctive or declaratory relief, Plaintiff must show a threat of ongoing or future harm. *Tracie Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-105 (1983)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Plaintiff must demonstrate that "if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the

threatened injury [is] certainly impending." *Tracie Park*, 205 F.3d at 1037 (internal quotation marks omitted) (quoting *Friends of the Earth, Inc.*, 120 S. Ct. at 709 (other citations omitted).

Courts have not uniformly determined whether injunctive relief is appropriate if the plaintiff is aware of the defendant's allegedly deceptive behavior. Some courts have held injunctive relief is inappropriate when a plaintiff is on notice of the defendant's conduct. *See In re Simply Orange Juice*, 2017 WL 3142095, at *6 (W.D. Mo. July 24, 2017) (the court found injunctive relief was inappropriate when the plaintiffs were "already on notice of defendant's practices" and did not intend to purchase the product in the future); *Frankle v. Best Buy Stores, L.P.*, 609 F.Supp. 2d 841, 849 (D. Minn. April 22, 2009) (the court held the plaintiff did not sufficiently plead Article III standing because the plaintiff would not benefit from a preliminary injunction in that the plaintiff was already aware of the defendant's failures); *Kaiser-Flores v. Lowe's Home Centers, Inc.*, 2009 WL 762198, at *7 (W.D. North Carolina March 19, 2009) ("[a]ccepting the facts alleged as true, and the other evidence presented, Plaintiff is already on notice of the potential danger and fully aware how to cure or remedy her complaint"); *Goldstein v. Home Depot U.S.A., Inc.*, 609 F.Supp.2d 1340, 1348 (N.D. Ga. March 11, 2009) (the court found a plaintiff bringing a putative class action lacked standing to seek an injunction because the plaintiff did not have any future plans to purchase another product from the retailer and the plaintiff did not request the retailer replace or modify the product).

However, other courts have rejected the argument that once a plaintiff learns of the alleged deception, there can be no ongoing harm. *See Bratton*, 2017 WL 2126864, at *9 (although the plaintiff discovered the deceptive packaging practice, this awareness does not make the practice less misleading or mean the deceptive packaging practice has stopped, and the court explicitly rejected the defendant's awareness argument, reasoning that "the fact that [plaintiff] discovered [defendant's] allegedly unlawful practice does not make the packaging less misleading, nor mean that the practice is not ongoing"); *Hawkins v. Nestle U.S.A. Inc.*, 2018 U.S. Dist. LEXIS 19933, at *21-22 (E.D. Mo. Feb. 7, 2018) (the court denied motion to dismiss for lack of standing because the "[p]laintiff has also pled that she would personally benefit in a tangible way from injunctive relief, by alleging that if Defendant changes its practices, she is likely to buy the products in the future, and that she seeks to be relieved from Defendant's unlawful practice by the issuance of injunctive relief"); *White v. Just Born, Inc.*, 2017 U.S. Dist. LEXIS 114305, at *26-30 (W.D. Mo. July 21, 2017) (the court found the plaintiff pled a threat of

ongoing or future harm despite plaintiff's awareness of defendant's conduct because the alleged conduct is ongoing and unlawful); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (where the defendant's allegedly deceptive advertising and labeling practices were ongoing, and the plaintiffs sought to be relieved from such practices in the future, the fact that the plaintiffs discovered the alleged deception years earlier did not mean the plaintiffs lacked Article III standing).

Further, the MMPA has been interpreted by courts to have a prospective preventive effect. *See Berry v. Volkswagen Grp. Of Am., Inc.*, 397 S.W.3d at 425, 433 (Mo. 2013) (the MMPA's "remedial measures are designed not only to remedy violations of the MMPA, but also prospectively to deter prohibited conduct and protect Missouri citizens").

This Court is especially persuaded by *Bratton* and *Hawkins,* and therefore rejects Defendants' argument that Plaintiff suffers no concrete and particularized harm because he is now aware the product does not contain ginger. Like in *Bratton* and *Hawkins*, Plaintiff is aware that the Product allegedly does not contain ginger and has stopped purchasing the Product. However, as in *Bratton* and *Hawkins*, Plaintiff would purchase the Product again if the alleged unlawful conduct ceased.

For the putative class to survive Defendants' motion to dismiss, the Plaintiff must meet Article III standing as an individual. If the Plaintiff meets Article III jurisdictional requirements as an individual, the putative class will also meet Article III standing requirements. *See Wheeler v. Am. Profit Recovery, Inc.*, 2017 WL 44585, at *2 (E.D. Mo. Jan. 3, 2017) ("Individual Article III standing is a prerequisite for all actions, including class actions.") (quoting *Chorosevic v. MetLive Choices*, 2007 WL 2159475, at *3 (E.D. Mo. July 26, 2017)).

Accordingly, because Plaintiff stated he would buy the Product in the future if the Product contained ginger, the Court finds Plaintiff has pled sufficient facts to state a claim that is plausible on its face and survives a motion to dismiss for lack of Article III standing individually and as a putative class. *See Ashcroft*, 556 U.S. at 678.

## IV. Conclusion

After carefully reviewing the parties' briefs, and for the reasons stated above, Defendants' Motion to Dismiss (doc. 18) is **DENIED**.

**IT IS SO ORDERED.**

                                                s/ Roseann A. Ketchmark
                                                ROSEANN A. KETCHMARK, JUDGE
                                                UNITED STATES DISTRICT COURT

DATED: April 25, 2018