IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ARNOLD E WEBB, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; | ) ) ) ) |
| Plaintiff, | ) No. 4:17-00624-CV-RK |
| v. | ) ) ) |
| DR PEPPER SNAPPLE GROUP, INC., DR PEPPER/SEVEN UP, INC., | ) ) ) |
| Defendants. | ) |

## ORDER DENYING MOTION TO INTERVENE

Before the Court is the Motion to Intervene and Motion to Dismiss or, in the Alternative, to Stay or Transfer this Action Pursuant to the First-to-File Rule ("Motion to Intervene") and suggestions in support filed by Jackie Fitzhenry-Russell and Robin Dale ("Proposed Intervenors"). (Doc. 44.) Defendants Dr Pepper Snapple Group, Inc., and Dr Pepper/Seven Up, Inc. and Plaintiff Arnold Webb filed separate suggestions in opposition. (Docs. 53, 54.) Proposed Intervenors filed reply suggestions. (Doc. 59.) For the reasons below, the Motion to Intervene (doc. 44) is **DENIED**.

## Background

On December 28, 2016, Proposed Intervenors filed a putative class action in California Superior Court against Defendants, which was later removed to the Northern District of California. *Fitzhenry-Russell and Dale v. Dr Pepper Snapple Group, Inc. et al*, No. 17-cv-00564-NC (N.D. Cal.) (the "*Fitzhenry-Russell* action"). In the *Fitzhenry-Russell* action, Proposed Intervenors seek to certify a California statewide class[1] of all persons who purchased certain soft drinks sold by Defendants between December 23, 2012, and the present. (Doc. 45-1 at ¶¶ 21, 72.) Proposed Intervenors allege Defendants manufacture, market, advertise, and sell

---

[1] The Court notes Proposed Intervenors' Motion to Intervene and suggestions in support (doc. 44) states Proposed Intervenors seek to certify a nationwide class. However, Proposed Intervenors filed a Motion for Class Certification in the *Fitzhenry-Russell* action on April 9th, 2018. This motion seeks certification of a California statewide class, not a nationwide class. (Doc. 153.) Despite this variation, the Court's conclusion in denying the Motion to Intervene does not change.

soft drinks under several brand names, including "Canada Dry," and falsely advertise these products as being "Made from Real Ginger" when the products are manufactured with a flavoring substitute. (*Id.* at ¶¶ 3, 24.) Proposed Intervenors further allege consumers relied on Defendants' representations and paid a premium for these products due to the misrepresentation that they are made from, and contain, real ginger root. (*Id.* at ¶¶ 23, 40, 49.)

On July 27, 2017, Plaintiff filed this putative class action against Defendants alleging Defendants falsely advertised Canada Dry Ginger Ale (the "Product") as being "Made from Real Ginger" when the Product does not contain a detectable amount of ginger (the "*Webb* action"). (Doc. 1.) Plaintiff alleges Defendants violated the Missouri Merchandising Practices Act in addition to common law allegations of breach of express warranty, breach of implied warranty of merchantability, fraud, intentional misrepresentation, negligent misrepresentation, and quasi contract/unjust enrichment/restitution. Plaintiff seeks to represent a nationwide class as well as a Missouri subclass. (*Id.* ¶ 6.)

Proposed Intervenors seek to permissively intervene in the *Webb* action pursuant to Federal Rule of Civil Procedure 24(b). If permissive intervention is granted, Proposed Intervenors seek to dismiss, stay, or transfer the *Webb* action to the Northern District of California. (Doc. 45.) Plaintiff and Defendants[2] oppose all three requests.

---

[2] Defendants do not provide a complete discussion of permissive intervention in their response to the Motion to Intervene and instead address some of Proposed Intervenors' arguments concerning transfer, allegations of collusion, and a California local rule violation. Defendants state permissive intervention is inappropriate and that 28 U.S.C. § 1404 does not allow transfer in this situation. Defendants also address Proposed Intervenors' arguments regarding collusion surrounding the notice provided regarding the existence of the *Webb* action.

While Proposed Intervenors accuse Plaintiff and Defendants of collusion, the Court finds these accusations are not supported by evidence in the record or briefing by the parties. Proposed Intervenors also argue Plaintiff and Defendants violated Northern District of California Local Rule 3-13; however, this Court will not opine on the enforcement or interpretation of the Northern District of California's Local Rules. Finally, the Court need not address Proposed Intervenors' argument regarding transfer pursuant to 28 U.S.C. § 1404(a) because the Court finds permissive intervention is unavailable.

**Discussion**

I.  **Motion to Intervene Under Rule 24(b)**

    A.  **Legal Standard**

"On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The decision to grant or deny a motion for permissive intervention is wholly discretionary." *S.D. ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003) (citations omitted). When considering a motion for permissive intervention, the court principally considers "whether proposed intervention would unduly delay or prejudice the adjudication of the [original] parties' rights." *Id.* In addition, the Eighth Circuit requires a party seeking to intervene to establish Article III standing. *U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009).

    B.  **Analysis**

        1.  **Timeliness of the Motion to Intervene**

The timeliness of a motion to intervene is determined from all circumstances and is within the court's discretion. *United States v. Ritchie Special Credit Invs. Ltd.*, 620 F.3d 824, 831-32 (8th Cir. 2010) (citation omitted). Courts apply several factors to determine timeliness: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *American Civil Liberties Union of Minnesota v. Tarek Ibn Ziyad Academy*, 643 F.3d 1088, 1094 (8th Cir. 2011).

            a.  **Progress of the *Webb* Action at the Time of the Motion to Intervene**

Proposed Intervenors argue the *Webb* action had not progressed substantially when the Motion to Intervene was filed because Defendants have not yet answered and a motion to dismiss is still pending. Plaintiff counters that the *Webb* action had progressed significantly at the time the Motion to Intervene was filed because by that time, a motion to dismiss had been filed, a scheduling order and discovery plan had been filed, parties had exchanged discovery, a protective order had been filed, and the parties had engaged in court-ordered mediation. The Court finds this factor could weigh in favor of either party and is thus, neutral. *See Worthington v. Bayer Health Care LLC*, 2011 U.S. Dist. LEXIS 144369, at * 12 (D.N.J. Dec. 15, 2011) (the

court held the case was still in its early stages where some written discovery had occurred, but no depositions had been held and the court had not ruled on any dispositive motions); *compare with American Civil Liberties Union of Minnesota*, 643 F.3d at 1094-95 (the Eighth Circuit found the district court did not abuse its discretion in finding a motion to intervene was untimely where, in addition to other factors, the original parties had engaged in significant motion practice, commenced written discovery, and begun taking depositions).

        **b.**      **Proposed Intervenors' Knowledge of the Existence of the *Webb* Action**

Next, the parties dispute when Proposed Intervenors first learned of the *Webb* action. Proposed Intervenors assert they were unaware of the existence of the *Webb* action until January 15, 2018, at which point, they promptly filed the Motion to Intervene. In response, Defendants and Plaintiff maintain Proposed Intervenors were provided notice of the *Webb* action on three separate occasions in the *Fitzhenry-Russell* action. First, on July 31, 2017, Defendants disclosed the existence of the *Webb* action to Proposed Intervenors in Defendants' written response to Proposed Intervenors' discovery requests. Second, on August 15, 2017, a draft joint case management conference statement was provided to Proposed Intervenors by Defendants that disclosed the existence of the *Webb* action. Further, on August 31, 2017, Proposed Intervenors edited Defendants' draft of this case management conference statement and sent their edits to Defendants. Third, on September 5, 2017, Defendants provided responses to Proposed Intervenors' discovery demands in the *Fitzhenry-Russell* action that again disclosed the existence of the *Webb* action. Proposed Intervenors argue the notice provided was inadequate because the notice was placed in single lines of text in lengthy discovery documents, and neither the Plaintiff nor Defendants directed Proposed Intervenors' attention to the *Webb* action's existence. The Court finds that Proposed Intervenors were first given adequate notice of the existence of the *Webb* action by Defendants' disclosure in their July 31, 2017 discovery response. *See EEOC v. Westinghouse Elec. Corp.*, 675 F.2d 164, 165-66 (8th Cir. 1982) (the court held the proposed intervenor had sufficient knowledge of pending action because the proposed intervenor was given notice of the existence of the action on several occasions).

### c. Proposed Intervenors' Reason for Delay in Seeking Intervention

Proposed Intervenors concede that they overlooked the disclosure of the *Webb* action during the exchange of documents from July 2017 through September 2017 between themselves and Defendants. Proposed Intervenors also argue the delay was caused by the failure of the Plaintiffs and Defendants to adequately notify Proposed Intervenors of the *Webb* action. The Court finds this reasoning unpersuasive. Proposed Intervenors were given adequate notice of the *Webb* action on July 31, 2017, and this oversight is not sufficient to excuse the delay.

### d. Whether the Delay in Seeking Intervention Prejudiced the Existing Parties

After reviewing the parties' arguments addressing prejudice in the permissive intervention analysis, the Court finds Proposed Intervenors' delay in seeking intervention would prejudice the existing parties. This analysis is identical to the prejudice analysis discussed in Section I.B.3. below.[3] *See American Civil Liberties Union of Minnesota*, 643 F.3d at 1095 ("when the discovery schedule is set, written discovery has commenced, and some depositions have been taken in a lawsuit, the addition of new parties often results in some prejudice to the existing parties") (citation omitted).

Based on all of the circumstances, and in considering the specific factors discussed above, the Court finds the Motion to Intervene is not timely.

### 2. Common Questions of Law or Fact Exist

Fed. R. Civ. P. 24(b)(1)(B) provides for permissive intervention by a party which "has a claim or defense that shares with the main action a common question of law or fact." Proposed Intervenors contend that common questions of law and fact exist because both cases involve the same Defendant: Dr Pepper Snapple Group, Inc.; the same product produced by Defendant; and the same allegations. Plaintiff argues that while both actions involve some common questions of fact, the two actions have different named plaintiffs; different defendants because the *Webb* action does not name Canada Dry Motts as a defendant whereas the *Fitzhenry-Russell* action does, and the *Webb* action names Dr Pepper/Seven Up Inc., as a defendant whereas the *Fitzhenry-Russell* action does not; different putative classes because the *Webb* action proposes a

---

[3] The parties do not address whether the delay in seeking intervention prejudiced the parties as part of the timeliness inquiry; instead, the parties address prejudice independently under the permissive intervention inquiry.

5

nationwide class and a Missouri subclass while the *Fitzhenry-Russell* action proposes a California class; and different causes of action because the *Webb* action involves claims under Missouri law and the *Fitzhenry-Russell* action does not.

As noted by the parties, both actions involve different named Plaintiffs; different defendant groups; and different specific causes of action. However, both actions involve a common defendant, Dr Pepper Snapple Group, Inc., and the same claims concerning the central issue in both actions. The central issue in both is whether Defendants engaged in false and misleading business practices with respect to the marketing, labeling, and sale of Defendants' soft drinks. Finally, although the *Fitzhenry-Russell* action involves several of Defendants' products, both the *Webb* and *Fitzhenry-Russell* actions involve the Product, Canada Dry Ginger Ale. Accordingly, both actions share common questions of law or fact.

3.   **Prejudice to Existing Parties**

The Court now turns to "the principal consideration" when ruling on a Rule 24(b) motion to intervene—"whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *S.D. ex rel. Barnett*, 317 F.3d at 787 (citations omitted). Proposed Intervenors argue intervention would not prejudice the existing parties because: (1) the *Fitzhenry-Russell* action would adequately protect Plaintiffs' rights if the case was transferred to California because the same issues are being litigated in both cases, and (2) there is no potential issue concerning personal jurisdiction over non-California purchases because the *Fitzhenry-Russell* court has previously rejected this argument. Plaintiff contends it would be prejudiced by allowing Proposed Intervenors to intervene because: (1) the California court may not have jurisdiction of the *Webb* action as a result of the recent Supreme Court decision in *Bristol-Myers Squibb v. Superior Court of California, San Francisco Cnty.*, 137 S. Ct. 1773 (2017); (2) Proposed Intervenors do not seek to litigate in this Court and instead only seek intervention to dismiss, transfer to California, or stay the *Webb* action; and (3) a lengthy stay of the *Webb* action would cause witnesses' memories to fade.

Weighing a number of different arguments discussed below, the Court finds intervention would prejudice the existing parties.

First, Plaintiff and Defendants are not prejudiced by the fact that a federal court outside of Missouri would be addressing Missouri state law claims. As discussed above, both actions

6

contain similar issues; therefore, the Northern District of California can sufficiently address the claims and defenses at issue in the *Webb* action.

Next, the Court is not persuaded by Plaintiff's argument that a stay would cause witnesses' memories to fade. *See Degnen v. Free Continuing Education Assoc., LLC*, 2015 WL 9646001, at *2 (E.D. Mo. June 17, 2015) (rejecting fading memories argument and granting stay "in the interest of reaching consistent results in similar [] cases"); *Degnen v. Gerzog*, 2015 WL 9645986, at *2 (same).

However, the Court finds Plaintiff and Defendants are prejudiced. First, the Court finds merit in Plaintiff's concern that Proposed Intervenors do not seek to litigate and only seek intervention to stay, transfer, or dismiss the *Webb* action. *See Bui v. Sprint Corp.*, 2015 U.S. Dist. LEXIS 80126, at *6-7 (E.D. Ca. June 19, 2015) ("Courts may consider various relevant factors [when considering a motion to intervene], including 'the nature and extent of the [proposed] intervenors' interest.") (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326,1329 (9th Cir. 1977)); *Glover v. Ferrero USA, Inc.*, 2011 U.S. Dist. LEXIS 121352, at *21 (D.N.J. October 20, 2011) ("[T]he Proposed Intervenors' stated interest in only having this action dismissed or transferred . . . will clearly prejudice the rights of the existing parties in this action, [and] the Court declines to permit the Proposed Intervenors to intervene.").

Next, the existing parties may be prejudiced if permissive intervention is granted and the *Webb* action is transferred to California due the Supreme Court's recent decision in *Bristol-Myers*. In *Bristol-Myers*, the Supreme Court held the California court did not have specific jurisdiction over a non-resident defendant with respect to non-resident Plaintiff's claims because the defendant did not have sufficient contacts with California. 137 S. Ct at 1781-1782. While the *Fitzhenry-Russell* Court has already considered and determined *Bristol-Myers* did not apply to putative class actions, courts have not interpreted *Bristol-Myers* uniformly concerning its application to putative class actions. *See DeBernardis v. NBTY, Inc.*, 2018 WL 461228, at *6-7 (N.D. Ill. Jan. 18, 2018) (the court found the holding in *Bristol-Myers* did apply to putative class actions); *compare with Sanchez v. Launch Tech. Workforce Solutions*, 2018 U.S. Dist. LEXIS 28907, at *16-17 (N.D. Ga. Jan. 26, 2018) (the court found the holding in *Bristol-Myers* did not apply to putative class actions.) Thus, while it is uncontested that this Court has personal jurisdiction over Defendants, is it unsettled if the Northern District of California would have personal jurisdiction over Defendants with respect to claims raised in the *Webb* action.

7

Accordingly, after considering the parties' arguments, the Court finds intervention would prejudice the existing parties.

### 4. Article III Standing

To demonstrate Article III standing, the movant must allege facts showing each of the following elements: (1) an injury in fact that is concrete, particularized, and either actual or imminent if the Motion to Intervene is denied; (2) "the injury is fairly traceable to the defendant's conduct[;]" and (3) "a favorable [court] decision will likely redress the injury." *American Civil Liberties Union of Minnesota*, 643 F.3d at 1092 (citations omitted).

The issue of Article III standing is first raised by Plaintiff in response to Proposed Intervenors' Motion to Intervene. Plaintiff argues Proposed Intervenors do not have standing because they will not suffer a concrete and particular injury if the Motion to Intervene is denied. In their reply brief, Proposed Intervenors claim they easily meet the standing requirements because they have standing for the same reasons Plaintiff has standing. Proposed Intervenors argue they would be members of Plaintiff's asserted nationwide class.

In their briefing, Plaintiff confuses what is required for the injury prong of the Article III standing requirement. Proposed Intervenors do not have to prove they would be injured if the Court would not allow them to intervene. Instead, the Proposed Intervenors only need demonstrate that they meet the elements of Article III standing. Here, Proposed Intervenors' injury, traceability, and redressability aspects are similar to Plaintiff's. As the Court has already determined in its Order on Defendants' Motion to Dismiss (doc. 68), such aspects meet the elements for standing.

## II. Motion to Dismiss or, in the Alternative, to Stay or Transfer this Action Pursuant to the First-to-File Rule

Because the Court finds that permissive intervention is inappropriate, the Court need not address, and will not grant, Proposed Intervenors' request to dismiss, transfer, or stay this case. *See Jiang v. Porter*, 2016 WL 4415352, at *3 (E.D. Mo. Aug. 19, 2016) ("Because the Court finds it neither necessary nor appropriate to allow the movants to intervene in this matter, the Court need not address their motion to stay the June 27 order.").

**<u>Conclusion</u>**

Upon review of the parties' arguments, the Court finds that permissive intervention is inappropriate because the Motion to Intervene is untimely and intervention would unduly prejudice the existing parties. The Court will not allow Proposed Intervenors to permissively intervene for the limited purpose of seeking to dismiss, stay, or transfer this action. Consequently, Proposed Intervenors' Motion to Intervene and Motion to Dismiss or, in the Alternative, to Stay or Transfer this Action Pursuant to the First-to-File Rule (doc. 44) is **DENIED.**

**IT IS SO ORDERED.**

                                            s/ Roseann A. Ketchmark
                                            ROSEANN A. KETCHMARK, JUDGE
                                            UNITED STATES DISTRICT COURT

DATED: April 26, 2018